UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:

     Laurie R. Montalto,                     Case No. 8-14-71323-reg
                                                     Chapter 7

                           Debtor.                  **NOTICE**
-------------------------------------------------------X

**To The Debtor, Debtor's Counsel, the Chapter 7 Trustee, and All Listed Creditors:**

**PLEASE TAKE NOTICE THAT:**

        Upon the application of the United States Trustee for Region 2, a hearing will be held before the Honorable Robert E. Grossman, United States Bankruptcy Judge of the United States Bankruptcy Court for the Eastern District of New York at 290 Federal Plaza, Central Islip, New York 11722, Courtroom 860, on **July 14, 2014 at 9:30 a.m.,** or as soon thereafter as counsel may be heard, for the entry of an order dismissing this Chapter 7 case under 11 U.S.C. §§ 707(b)(1), (2) and (3) and Rule 1017 of Federal Rules of Bankruptcy Procedure, and such other and further relief as may seem just and proper.

        The original application is on file with the Clerk of the Bankruptcy Court, Federal Plaza, Room 290, Central Islip, New York and with the United States Trustee, Federal Plaza, Room 560, Central Islip, New York and may be reviewed at either office during regular business hours.

        Responsive papers shall be filed with the Clerk of the Bankruptcy Court, 290 Federal Plaza, PO Box 9013, Central Islip, New York 11722 in conformity with the Bankruptcy Rules and the Local Rules of the Bankruptcy Court in accordance with General Order #463 (which can be found at www.nyeb.uscourts.gov, the official website for the Bankruptcy Court), by registered users of the Bankruptcy Court's electronic case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), Wordperfect or any other Windows-based word processing format (with a hard-copy delivered directly to Chambers, and personally served upon the United States Trustee, 560 Federal Plaza, Central Islip, New York 11722-4456, Attn: Alfred M. Dimino, Esq., no later than seven (7) days prior to the hearing date set forth above.   Any responsive papers shall be in conformity with the Federal Rules of Bankruptcy Procedure and indicate the entity submitting the response, the nature of the response and the basis of the response.

        The hearing scheduled herein may be adjourned from time to time by announcement made in open court without further written notice.

Dated: Central Islip, New York
      May 22, 2014

                            WILLIAM K. HARRINGTON
                            UNITED STATES TRUSTEE FOR REGION 2
                            Office of the United States Trustee
                            Long Island Federal Courthouse
                            560 Federal Plaza
                            Central Islip, New York 11722
                            (631) 715-7800

UNITED STATES BANKRUPTCY COURT          HEARING DATE:  **July 14, 2014**
EASTERN DISTRICT OF NEW YORK            HEARING TIME:     **9:30 a.m.**
-----------------------------------------------------X
In re:

      Laurie R. Montalto,                                   Case No. 8-14-71323-reg

                                               Chapter 7

                       Debtor.                          **NOTICE OF MOTION**
-----------------------------------------------------X

      PLEASE TAKE NOTICE that, upon the annexed application, the United States Trustee for Region 2 will move this Court before the Honorable Robert E. Grossman, United States Bankruptcy Judge of the United States Bankruptcy Court at Long Island Federal Courthouse, Federal Plaza, Courtroom 860, Central Islip, New York on **July 14, 2014 at 9:30 a.m.**, or as soon thereafter as counsel can be heard, for the entry of an order dismissing this Chapter 7 case under 11 U.S.C. §§ 707(b)(1), (2) and (3) and Rule 1017 of Federal Rules of Bankruptcy Procedure, and such other and further relief as may seem just and proper.

      Responsive papers shall be filed with the Clerk of the Bankruptcy Court, 290 Federal Plaza, PO Box 9013, Central Islip, New York 11722 in conformity with the Bankruptcy Rules and the Local Rules of the Bankruptcy Court in accordance with General Order #463 (which can be found at www.nyeb.uscourts.gov, the official website for the Bankruptcy Court), by registered users of the Bankruptcy Court's electronic case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), Wordperfect or any other Windows-based word processing format (with a hard-copy delivered directly to Chambers, and personally served upon the United States Trustee, 560 Federal Plaza, Central Islip, New York 11722-4456, Attn: Alfred M. Dimino, Esq., no later than seven (7) days prior to the hearing date set forth above.   Any responsive papers shall be in conformity with the Federal Rules of Bankruptcy Procedure and indicate the entity submitting the response, the nature of the response and the basis of the response.

Dated: Central Islip, New York
      May 22, 2014

                                WILLIAM K. HARRINGTON
                                UNITED STATES TRUSTEE


                        By: **_s/ Alfred M. Dimino_**
                                Alfred M. Dimino
                                Trial Attorney
                                Office of the United States Trustee
                                Long Island Federal Courthouse
                                560 Federal Plaza
                                Central Islip, New York 11722
                                (631) 715-7800


TO:  Laurie R. Montalto, Debtor
      Michael J. Macco, Esq., Attorney for Debtor
      Kenneth P. Silverman, Esq., Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In Re:


  Laurie R. Montalto,       Case No. 8-14-71323-reg

               Chapter 7

           **CERTIFICATE OF SERVICE**


        Debtor.
-------------------------------------------------------X


    I, Linda Kmiotek, am employed at the Office of the United States Trustee for the Eastern District of New York, hereby certify that I caused a copy of the Notice, Notice of Motion and the Application for the entry of an order dismissing this Chapter 7 case under 11 U.S.C. §§ 707(b)(1), (2) and (3) and Rule 1017 of Federal Rules of Bankruptcy Procedure   to be served by regular mail upon the persons listed below, by mailing the same to their last known addresses.


Laurie R. Montalto
1967 Louis Kossuth Avenue
Ronkonkoma, NY 11779

Michael J. Macco, Esq.
Macco & Stern, LLP
135 Pinelawn Road, Suite 120 South
Melville, NY 11747

Kenneth P. Silverman, Esq.
SilvermanAcampora, LLP
100 Jericho Quadrangle, Suite 300
Jericho, NY 11753

Dated: Central Islip, New York
   May 22, 2014


          *S/ Linda Kmiotek*
          Linda Kmiotek
          Legal Clerk

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:

      Laurie R. Montalto,                    Case No. 8-14-71323-reg

                                                Chapter 7

                        Debtor.
--------------------------------------------------------X

## MOTION OF THE UNITED STATES TRUSTEE
## TO DISMISS CASE PURSUANT TO 11 U.S.C. § 707(b) (1), (2) AND (3)

**TO:   THE HONORABLE ROBERT E. GROSSMAN;**
**       UNITED STATES BANKRUPTCY JUDGE:**

The United States Trustee for Region 2 (the "United States Trustee"), moves this Court for the entry of an order, under 11 U.S.C. § 707(b)(1), (2) and (3) and Rule 1017 of the Federal Rules of Bankruptcy Procedure, dismissing this case as being presumed abusive, filed in bad faith or based upon the totality of the circumstances.   In support of this motion, the United States Trustee represents and alleges, upon information and belief, as follows:

### PRELIMINARY STATEMENT

The United States Trustee asserts that the Debtor's monthly household income is inconsistent with the income claimed by the Debtor, the Debtor's deductions on the Means Test Form are inaccurate, inappropriate or unsubstantiated and the Debtor's household has significant excess monthly income, both under the Means Test and according to Schedules "I" and "J." Therefore, the United States Trustee asserts that the Debtor's case should be dismissed as a presumed abuse case under 11 U.S.C. § 707(b)(2) or, alternatively, dismissed under 11 U.S.C. § 707(b)(3) based upon both bad faith and the totality of the circumstances, because granting the Debtor relief would be an abuse of the provisions of chapter 7.

## FACTS

### A. The Debtor's Schedules

1.      On March 28, 2014, Laurie R. Montalto (the "Debtor"), filed an individual

voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the Eastern District of

New York.   The Debtor is represented by Michael J. Macco, Esq. ("Counsel"). Kenneth P.

Silverman, Esq. was appointed as Chapter 7 trustee (the "Trustee").

2.      The Debtor's schedules reflect primarily consumer debts. See Voluntary Petition

and Schedules A, D, and F as filed with the Court on March 28, 2014. Schedule F lists total

unsecured debt as $44,976. (ECF Docket No. 1).

3.      The Debtor is a individual who resides in a house located at 1967 Louis Kossuth

Avenue, Ronkonkoma, New York (the "Residence"). On Schedule I and the Means Test

Form ("MTC"), the Debtor claims she is married with one child. (ECF Docket No. 1).

4.      On the Debtor's schedule J, she claims a household size of 3. On his Chapter 7

Statement of Current Monthly Income and Means-Test Calculation ("MTC"), the Debtor claims

a family size of 3. (ECF Docket No. 1).

5.      On Schedule I, the Debtor claims she has been, and is, employed for the past

four years as an advisor for Five Towns College. The Debtor claims that she earns an average

gross monthly income of $1,745.09. Additionally, the Debtor's spouse has been, and is,

employed for the past seven years as a sales executive by Opentable, Inc. The Debtor asserts that

her spouse has aggregate monthly gross income of $9,976.11. See Schedule I. (ECF Docket No.

1).

6.      The Debtor's total average gross monthly household income reflected on schedule

I is $11,721.20 or $140,654.40 annually. On the MTC, the Debtor claimed the same amounts as

her household's total monthly and annual gross income. See Schedule I and the MTC. (ECF

Docket No.1).

7.      Schedule A reflects that the Debtor owns the Residence with her spouse and having a value of $320,000. Schedule D reflects one secured debt, the mortgage on the Residence with an outstanding balance of $285,191 and Schedule J reflects a monthly mortgage payment in the amount of $2,433.99. <u>See</u> Schedules A, D and J. (ECF Docket No. 1).

8.      In Schedule B, the Debtor attests to ownership of personal property having an aggregate value of $15,511.94, including bank accounts and cash ($64), household goods and furnishings ($1,000), wearing apparel ($1,000), jewelry ($1,500) and a pension and 401K retirement plan ($11,947.94). <u>See</u> Schedule B. (ECF Docket No. 1).

9.      On Schedules D and E, the Debtor lists the mortgage debt and no priority debt. <u>See</u> Schedules D and E. (ECF Docket No. 1).

10.      On Schedule F, the Debtor lists four creditors holding total unsecured debt in the amount of $44,976, all of which is consumer debt. <u>See</u> Schedule F. (ECF Docket No. 1).

11.      On Schedules G and H, the Debtor lists no executory contracts, one unexpired Lease for a 2011 Ford Edge and the Debtor's spouse as a co-debtor on the mortgage obligation. <u>See</u> Schedules G and H. (ECF Docket No. 1).

12.      On the Schedule I, the Debtor claims an aggregate gross monthly income, from all sources, of $11,721.20, or an annual income of $140,654.40. <u>See</u> schedule I. (ECF Docket No. 1).

13.      On the Schedule I, the Debtor claims a family of 3, payroll tax and social security withholdings aggregating $3,602.81 ($43,233.72 annually), health insurance premium deductions of $430, life insurance premium deductions of $106.10, mandatory retirement plan contributions of $175.28, voluntary retirement plan contributions of $102.62, 401K loan

repayments of $117.44 and an average monthly net income, of $7,186.95. See Schedule I. (ECF Docket No. 1). A copy of which is annexed hereto as Exhibit A.

14.     On Schedule J, the Debtor claims monthly household expenses aggregating $7,172.52, including expenses of $2,433.99 for the mortgage payment, $525 for utilities, $250 for telephone, cellphone and cable, $900 for food, $570 for child care, $125 for clothing and dry cleaning, $50 for personal care items, $350 for medical expense, $150 for transportation, $100 for recreation, $200 for auto insurance, $1,176.53 for three car loan payments, $342 for the Debtor's spouse's credit card payments, and a monthly positive income of $14.43. See Schedule J. (ECF Docket No. 1). A copy of which is annexed hereto as Exhibit B.

15.     With respect to income, the Debtor's MTC, on Line 3, reflects gross monthly income from wages for the Debtor of $1,745.09 and $9,976.11 for her spouse. The Debtor claims a Total Current Monthly Income of $11,721.20, which appears on Line 12 and annual income of $140,654 on Line 13, an amount that exceeds the state median income by $70,503.40. See MTC. (ECF Docket No. 1).

16.     On April 15, 2014, the United States Trustee, in order to verify the accuracy of the information contained in the Debtor's petition, schedules, SOFA and MTC, sent an e-mail and, thereafter, a letter to Counsel requesting documents which would establish the veracity of the information in the Debtor's filings (the "Request"). A copy of which is annexed hereto as Exhibit C.

17.     The Debtor responded to the Request on May 13, 2014 and, thereafter, provided additional documents on May 21, 2014.

18.      With respect to expenses, the Debtor's MTC claims the following:

(A)     on Line 2, the Debtor claims she is married;
(B)     on Line 3, the Debtor claims she and her spouse have gross wages of $11,721.20;

(C)     on Line 13, the Debtor claims an annualized household income of $140,654.40;

(D)     on line 14, the Debtor took a family size of 3, herself, her spouse and a 3 year old daughter;

(E)     on Line 17, the Debtor took a marital adjustment deduction of $893.58 for her husband's car payment ($448.96), her husband's credit card payments ($342) and her husband's 401K loan repayments ($102.62);

(F)     on Line 20B, the Debtor took a deduction of $2,433.99 for a mortgage expense;

(G)     on Line 22A, the Debtor took a deduction of $684 for operating expenses for two automobiles;

(H)     on Lines 23 and 24, the Debtor took transportation ownership expenses of $517 (aggregating $1,034) and monthly automobile payments of $23.42 and $112, 27 respectively;

(I)     on Line 25, the Debtor took a deduction of $3,602.81 for payroll tax deductions;

(J)     on Line 27, the Debtor took a deduction of $106.10 for life insurance premiums;

(K)     on Line 30, the Debtor took a deduction of $570 for childcare expenses;

(L)     on Line 31, the Debtor took a deduction of $170 for additional health care expense;

(M)    on Line 32, the Debtor took a deduction of $100 for telecommunication expense;

(N)    on Line 34, the Debtor took a deduction of $430 for health insurance premiums;

(O)    on Line 40, the Debtor took a deduction of $100 for charitable contributions;

(P)     on Line 42, the Debtor took deductions aggregating $2,687.12 for future payments on secured debts (Honda Accord Lease-$112.27; mortgage-$2,433.99; 401K loan-$117.44; and Ford Edge lease-$23.42);

(Q)    on Line 50, the Debtor claims a negative monthly disposable income of $650.73.

See the Debtor's Means Test annexed hereto as Exhibit D. (ECF Docket No. 1).

19.     The §341(a) meeting of creditors was held on April 23, 2014 (the "Meeting"). The Trustee examined the Debtor and the Meeting was adjourned to May 19, 2014.

20.     Following the Meeting, the Debtor substantially responded to the Request.

21.       The Debtor provided, for herself and her spouse: tax returns for 2011 and 2012, payroll advices for the MTC Period, some bank account statements and cancelled checks, W-2 statements, a lease for the Residence, utility bills for the Residence and automobile documents.

22.       On May 5, 2015, the United States Trustee filed a statement of her inability to determine whether the Debtor's case would be presumed to be an abuse under §707(b). (ECF Docket No. 10). Thereafter, on October 18, 2013, the United States Trustee filed a supplemental statement indicating that the presumption of abuse arises in this case. (ECF Docket No. 1).

**B. <u>The Debtors' Income is Steady And Substantial</u>**

23.       The Debtor provided copies of her 2011 and 2012 joint Federal and New York State tax returns (the "Returns").

24.       In 2011, the Debtor and her husband had gross annual income from wages of $123,755 and total income of $123,920. The Debtor and her spouse had a federal income tax obligation of $10,769 and a state obligation of $46,014. They received aggregate tax refunds of $13,376.

25.       In 2012, the Debtor and her spouse had gross annual income from wages of $130,178 and total income of $140,074 (including pension distributions of $9,053). The Debtor and her spouse had a federal income tax obligation of $15,829 and a state obligation of $6,910. They received aggregate tax refunds of $11,234.

26.       In 2013, the Debtor and her spouse had gross annual income from wages of $145,701 and total income of $150,311 (including pension distributions of $4,000). The Debtor and her spouse had a federal income tax obligation of $17,598 and a state obligation of $7,809. They received aggregate tax refunds of $13,908.

## C. Payroll Advices:

27.　　　The Debtor's payroll advices for September 1, 2013 through February 28, 2014 (the "MTC Period") reflect total income of $10,470.53 or a monthly average of $1,745.09. The Debtor's average monthly deductions for federal income taxes was $283; state income taxes $51.49; social security $108.20, Medicare $25.30 and New York State Disability $2.60. The Debtor's net pay for the MTC Period averaged $1,274.50.

28.　　　The Debtor's husband's payroll advices for September 1, 2013 through February 28, 2014 (the "MTC Period") reflect total income of $59,856.65 or a monthly average of $9,976.11. The Debtor's husband's average monthly deductions for federal income taxes was $2,036.36; state income taxes $574.38; social security $468.73; and Medicare $139.05. Additionally, Mr. Montalto has deductions for Medical insurance ($365.67), Dental insurance ($26.24), 401K contributions (10% of his gross salary commencing February 1, 2014), repayment of a 401K loan ($111.17), and Life insurance premiums ($114.94 commencing January 1, 2014). The Debtor's husband's net pay for the MTC Period averaged $6,030.92.

29.　　　Together, the Debtor and her husband had an average net monthly income during the MTC Period of $7,305.42 ($118.47 more than listed on Schedule I).

## D. Tax Refunds:

30.　　　For 2011, the Debtor received aggregate tax refunds of $13,376 (an average of $1,114.66 per month). For 2012, the Debtor received aggregate tax refunds of $11,234 (an average of $936.17 per month).   For 2013, the Debtor received aggregate tax refunds of $13,908 (an average of $1,159 per month).

## E. The Debtor's Expenses:

31.　　　On March 28, 2014, the Debtor filed her schedule J. Schedule J reflects average monthly expenses aggregating $7,172.52. The expenses includes mortgage payments of $2,434,

$525 for utilities, $100 for telephone, $150 for cable, $900 for food, $570 for child care, $125 for clothing, laundry and dry cleaning, $50 for personal care products, $350 for medical and dental expenses, $150 for transportation, $100 for charitable contributions, $20 for car insurance, $1,176.53 for three car payments and $342 for Mr. Montalto's credi card payments.

**F. The Debtor's Net Monthly Income After Monthly Expenses:**

32.    Schedule J reflects a monthly positive net income after expenses of $14.43.

**G. The Debtor's Bank Account:**

33.    The Debtor and her husband have a joint checking account with JPMorgan Chase Bank (the "Chase Bank Account"). The Debtor and her husband have direct deposit of their payroll checks into the Chase Bank Account. The Debtor and her husband appear to pay all of their expenses from this joint account.

**ARGUMENT**

**THE PRESUMPTION OF ABUSE UNDER 11 U.S.C. §707(B)**

34.    Section 707(b)(2)(A)(I) of the Bankruptcy Code requires the Court to presume that a debtor's chapter 7 filing is abusive "if the debtor's current monthly income reduced by amounts determined under clauses (I), (ii), (iii), and (iv) [of § 707(b)(2)(A)], and multiplied by 60 is not less than the lesser of –

(I)    25 percent of the debtor's nonpriority unsecured claims in the case, or $7,475, whichever is greater; or

(II)    $12,475.

Stated differently, if after deducting all allowable expenses from a debtor's current monthly income, the debtor has less than $124.58 per month in monthly net income (*i.e.*, less than $7,475 to fund a 60-month plan), the filing is not presumed abusive.   If the debtor has monthly income of more than $207.92 or $12,475 to fund a

sixty-month plan, the filing is presumed abusive.   Finally, if the debtor has between

$124.58 and $207.92 per month, the case will be presumed abusive if that sum, when

multiplied by 60 months, will pay 25% or more of the debtor's non-priority unsecured

debts.

**The Presumption Arises:**

35.      At issue in this case are deductions that appear to have been claimed

improperly by the Debtor ("Form B22A" or "Means Test Form").

36.      For the reasons discussed below, the U.S. Trustee submits that the

presumption of abuse may exist in this case.

37.      As required by §704(b)(1)(A), the U.S. Trustee reviewed the Debtor's

Schedules, Statement of Financial Affairs, the Debtor's and her husband's payroll

advices for the MTC Period, tax returns, bank statements, loan statements and the

Means Test Form ("MTC") to determine whether granting the Debtor relief under

chapter would be presumptively abusive pursuant to § 707(b) (2). Based upon these

documents, it appears that:

a) The Debtor's reported annualized current monthly household income on the
MTC of $140,654 exceeds the applicable state median income for a family of
three in New York, which is $70,151. See Form B22A (Exhibit B), Line 13 and
Census Bureau Median Family Income by Family Size in 2011 Inflation
Adjusted Dollars:
See http://www.usdoj.gov/ust/eo/bapcpa/bci_data/median_income_table.htm;

b) On Line 17 of Form 22A, the Debtor claims a marital adjustment in the
aggregate amount of $893.58 (the "Adjustment"). The Adjustment for her
husband's separate expenses includes $448.96 for a car payment, $342 for the

credit card payments and $102.62 for a 401K loan repayment. First, Mr. Montalto is a lessee of two vehicles: (1) a 2013 Honda Accord which lease commenced on June 7, 2013 for a period of 36 months with a monthly payment of $259.09; and (2) a 2014 Jeep Grand Cherokee which lease commenced on January 18, 2014 for a period of 39 months with a monthly payment of $448.96. Therefore, the Debtor is entitled to an Adjustment as it relates to the vehicles. The aggregate amount of the monthly payments for the two leases is $708.05. Second, the Debtor is not entitled to an Adjustment for her husband's credit card payments unless the Debtor can show that the entirety of the debt was attributable to non-household expenses. The Debtor provided copies of Mr. Montalto's credit card statements from Capital One Bank and JPMorgan Chase Bank for the years 2013 and 2014. Both account statements reflect charges which were predominantly household expenses. Third, the Debtor is not entitled to an Adjustment for the repayment of Mr. Montalto's 401K loan. It appears that the loan in question was taken in the first quarter 2013, deposited into the Chase Bank account and utilized to pay household expenses.

c) On Lines 23 and 24 of Form 22A, the Debtor claims two transportation ownership/lease deductions each in the amount of $517. The Debtor is the lessee of one vehicle, a 2011 Ford Edge which lease commenced on March 12, 2011 for a period of 39 months with a monthly payment of $485.62. This lease expires on May 12, 2014. As indicated above, Mr. Montalto is the lessee on two vehicles.   Therefore, the Debtor is only entitled to one deduction on Line 23 and not entitled to the additional deduction on Line 24;

d) On Line 25 of Form B22A, other necessary expenses-taxes-the Debtor took a deduction of $3,602.81 ($43,234 annually). Based upon the Debtor's 2011, 2012 and 2013 tax returns and assuming no significant increase in income, the same filing status and similar allowances and deductions, the Debtor's actual household monthly tax obligation approximates $2,858. The Debtor's 2011

16

federal income tax, on $123,000 in income, was $10,769 and her state income tax was $6,014. Together, the $16,783 in taxes averages $1,399 per month.. The Debtor's 2012 federal income tax, on $140,000 in income, was $15,829 ($905 relating to a penalty for a 401K withdrawal) and her state income tax was $6,910. Together, the $17,248 in taxes averages $1,437 per month. The Debtor's 2013 federal income tax, on $150,000 in income, was $17,598 ($400 relating to a penalty for a 401K withdrawal) and her state income tax was $7,809. Together, the $25,407 in taxes averages $2,117 per month. Additionally, the 2013 payroll advices for both the Debtor and her husband reflect social security contributions of $577 and Medicare $164. The Debtor's average monthly total payroll tax deductions needed to pay her actual tax obligations equals $2,858 or $745 less than listed on Schedule I and the MTC. Parenthetically, the over withholding would result in tax refunds aggregating $10,000 which is consistent than the $13,376, $11,234 or $13,908 they received for 2011, 2012 and 2013, respectively; See In re Riggs, 359 B.R. 649 (Bankr. E.D.Ky. 2007); In re Hale, 2007 WL 2990760 (Bankr. N.D. Ohio Oct. 10, 2007);

e) On Line 30 of Form22A, the debtor took a deduction of $570 for childcare. The U. S. Trustee requested documentation of this expense and the Debtor has not provided specific information verifying the amount of this expense;

f) On Line 31 of Form22A, the Debtor took a deduction of $170 for health care expense. This expense is defined as being in excess of the Line 19B $180 I.R.S. Standard allowance. The Debtor has failed to provide the documentation verifying the amount of this deduction;

g) On Line 32 of Form 22A, the Debtor took a deduction of $100 for telecommunications services. This deduction by definition is for costs other

than basic home and cellular telephone service and which is necessary for the Debtor and her dependent's health and welfare. The Optimum and AT&T wireless bills provided do not reflect any services other than basic home and cellphone service. Therefore, the Debtor is not entitled to this deduction;

h) On Line 40 of Form 22A, the Debtor took a deduction of $100 for charitable contributions. According to the Debtor's 2011, 2012 and 2013 tax returns the Debtor has made average annual contributions of $1,677 or an average of $140 per month;

i) On Line 50 of Form 22A, the Debtor claims monthly disposable income of a negative $650.73, which results in no presumption of abuse. However, the Debtor has taken deductions to which she is not entitled and deduction in amounts which are either inflated or unverified. The United States Trustee asserts, upon information and belief, that, if the MTC was accurately completed as indicated above, the Debtor's MTC would result in the presumption arising. See the United States Trustee MTC attached as Exhibit E.

38.       Similarly, if the Debtor's Schedules I and J were revised to incorporate the Debtor's reduced tax obligations ($2,858), actual net income ($7,932)and reasonable and necessary expenses ($6,362)(elimination of the expiring lease for the 2011 Ford Edge in the amount of $468.48 and Mr. Montalto's credit card payments in the amount of $342) the Debtor's household monthly disposable income would greatly exceed her household's expenses.

39.       Finally, the Debtor has not claimed special circumstances which would result in a rebuttal of the presumption.

## BAD FAITH UNDER 11 U.S.C. § 707(B) (3) (A)

40.	The Bankruptcy Code at §707(b) (3) (A) provides:

> [I]n considering under paragraph (1) whether the
> granting of relief would be an abuse of the provisions of
> this chapter in a case in which the presumption in
> subparagraph (2) (A) (i) of such paragraph does not arise
> or is rebutted, the court shall consider- (A) whether the
> debtor filed the petition in bad faith

41.	Section 707(b) (3) (A) was added to the Bankruptcy Code in the

amendments made by the Bankruptcy Abuse Prevention and Consumer Protection Act

("BAPCPA").

42.	Because the Debtor is an individual and her debts are primarily

consumer in nature Bankruptcy Code §707(b) applies to this debtor.

43.	"Bad Faith" is not defined in the Bankruptcy Code. Rather, it is

determined by the totality of the circumstances of the case. See In re Lombardo, 370

B.R. 506, 511 (Bankr. E.D.N.Y 2007).

44.	Courts deciding whether a petition was filed in "bad faith" have

adopted similar legal standards.

> First, the Court must evaluate whether, in light of all the
> relevant facts and circumstances, it appears the debtor's
> intention in filing the petition is inconsistent with the
> Chapter 7 goals of providing a fresh start to the debtor
> and maximizing the return to creditors.

In re Mitchell Id., 357 B.R. 142, 154 (Bankr. C.D. Cal, 2006).

45.	The non-exclusive factors utilized by the Mitchell court were:

> (a) Whether the chapter 7 debtor has a likelihood of sufficient future income to
>
> fund a chapter 11, 12, or 13 plan which would pay a substantial portion of the
>
> unsecured claims;

(b) Whether debtor's petition was filed as a consequence of illness, disability, unemployment or other calamity;

(c) Whether debtor obtained cash advances and consumer goods on credit exceeding his or her ability to repay;

(d) Whether debtor's proposed family budget is excessive or extravagant;

(e) Whether the debtor's statement of income and expenses misrepresents debtor's financial condition;

(f) Whether debtor made eve of bankruptcy purchases;

(g) Whether the debtor has a history of bankruptcy petition filings and dismissals;

(h) Whether the debtor has invoked the automatic stay for improper purposes, such as to delay or defeat state court litigation; and

(I)   Whether egregious behavior is present.

In re Mitchell at 154. See also In re Nicole Siegenberg, 2007 WL 6371956 (Bkrtcy.C.D.Cal.).

**The Mitchell Factors Applied**:

46.    (a)   Whether the chapter 7 debtor has a likelihood of sufficient future income to fund a chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims- The Debtor's household, consisting of three persons, appears to have had consistent and substantial income. The Debtor's household's gross income for 2011 exceeded $123,000; in 2012 it exceeded $130,000, in 2013 it exceeded $145,000 and will approximate $140,000 in 2014. Upon information and belief, based upon over withholdings and the expiring car lease, the Debtor's household net income is higher than listed on Schedules I and J. Therefore, the Debtor should have sufficient income to provide the necessities for herself and her family and repay a significant portion of the outstanding debt;

(b) Whether debtor's petition was filed as a consequence of illness, disability, unemployment or other calamity-The Debtor has not alleged any illness or disability, as the cause of the filing. The Debtor and her husband have been continuously employed over the past four years, have had a consistent annual income exceeding $130,000 in the last two years and that income is projected to continue and increase in the future.

(c) Whether debtor obtained cash advances and consumer goods on credit exceeding his or her ability to repay- The Debtor's schedule F lists four creditors, all credit card accounts, with an aggregate balance due of $45,000. Based upon the annual income reflected in the Debtor's schedules, it is unclear if the Debtor has obtained cash advances and purchased consumer goods exceeding her ability to repay;

(d) and (e) Whether debtor's proposed family budget is excessive or extravagant and whether the debtor's statement of income and expenses misrepresents debtor's financial condition-

Schedules I and J as filed by the Debtor may be misleading:

1. Income- The Debtor claimed monthly household income on the Schedule I of $11,721 or $140,654 annually. The Debtor further claims payroll deductions aggregating $3,603. However, the Debtor's claimed payroll tax deductions are overstated and result in significant tax refunds year after year, including $13,376 in 2011, $11,234 in 2012 and $13,908 in 2013. The aggregate dollar amount of deductions necessary to meet the Debtor's annual withholding tax and other obligations approximates $2,858. Therefore, the Debtor's actual net monthly household income approximates $7,932.

2. Expenses-The Debtor claims monthly expenses in the amount of $7,172.52. As indicated above, the Debtor claims an expense of $468.48 for the monthly

payment on the lease of the 2011 Ford Edge is illusory. The Ford lease will expire in June 2014

and this expense will disappear. Schedule J, Line 24 specifically requires a debtor to indicate if

there will be a decrease in the listed expenses within the year following the filing. In fact, the

form gives as a specific example the expiration of a car loan payment. The Debtor indicated

"No" with full knowledge of the expiring lease.   This reduction alone would increase the

Debtor's monthly excess household income to $482.91, without considering the over stated

withholding deductions. Furthermore, Mr. Montalto's credit card expense of $342 is

inappropriate.   The Debtor and her husband conduct their finances as an economic unit. They

have a joint bank account into which they both have direct deposit of their earnings and from

which they pay all of their bills. It appears that both the Debtor's and Mr. Montalto's credit cards

have been consistently used to purchase goods and services for the benefit of their household. If

this deduction is disallowed, the Debtor's household's monthly net income increases to $825,

again, without considering the over stated withholding deductions. Additionally, if the

withholding adjustments are made, the Debtor's household's net monthly income further

increases to $1,570, which is more than sufficient to repay all of both the Debtor's and Mr.

Montalto's outstanding debts over a reasonable amount of time.

      (f) <u>Whether debtor made eve of bankruptcy purchases</u>-The unsecured credit card

debt appears to have been incurred over a period of time prior to the filing;

      (g) <u>Whether the debtor has a history of bankruptcy petition filings and</u>

<u>dismissals</u>-the Debtor does not appear to have filed any prior bankruptcy cases; and

      (h)   <u>Whether egregious behavior is present</u>-

      (a) The actions of the Debtor in this case evidence egregious conduct.

Based upon the information and documents provided, the Debtor has over reported her actual tax

obligations on Schedule I and the MTC. The Debtor's initial schedules I and J and the MTC were configured to give the appearance that the Debtor had no excess monthly income and, therefore, avoid the scrutiny of the Trustee and the United States Trustee. This "goes contrary to a fundament of bankruptcy: to grant a fresh start to the honest but unfortunate debtor" In re Steven/Tamra O'Brien, 373 B. R. 503, 507 (Bankr. N. D. Ohio, 2007). (internal cites omitted) (dismissing on totality of the circumstances on bad faith grounds after the court determined the debtors incurred substantial secured debt just prior to seeking bankruptcy relief so as to avoid paying their unsecured debt).

   (b) The filing of misleading and inaccurate schedules and MTC's by the Debtor evidences egregious conduct. The schedules and statements were constructed to give the impression that the Debtor has no disposable income in an attempt to avoid an inquiry by the U. S. Trustee. The Debtor's schedules I (withholding amounts), J (expiring lease and credit card payments) and MTC (Lines 17, 24, 25, 30, 31, 32 and 42) are miscalculated and the Debtor has taken inappropriate deductions.

   (c) The Court should also take into consideration certain recent changes to the Debtor's household's finances including: (1) according to Mr. Montalto's payroll advices, on January 1, 2014 he commenced deductions of over $106 per month for life insurance; (2) on January 18, 2014, Mr. Montalto entered into the Jeep Grand Cherokee lease with payments of $449 per month for a term of 39 months; and (3) on February 1, 2014, Mr. Montalto increased his annual 401K contributions from 2.6% ($3,402.12 in 2013) to 10% (estimated at $13,000 in 2014).

  47.  The United States Trustee submits that the Debtor seeks a discharge of her debts at a time when her household income has been over $140,000 annually, her expenses if accurately stated would be reduced and she could use the surplus income to repay a significant portion of her

unsecured debt. The United States Trustee asserts that based upon the totality of the circumstances

presented, the Debtor has filed her petition in bad faith.

## DISCUSSION OF THE TOTALITY OF THE CIRCUMSTANCES, § 707(b) (3) (B):

48.    The United States Trustee asserts that the granting of the relief to the Debtor

would be an abuse of the provisions of chapter 7 pursuant to § 707(b) (1) and (b) (3).

49.    Section 707(b) (1) states, in relevant part:

> (1) After notice and a hearing, the court, on its own motion or on a
> motion by the United States Trustee, trustee (or bankruptcy
> administrator, if any), or any party in interest, may dismiss a case
> filed by an individual debtor under this chapter whose debts are
> primarily consumer debts, or, with the debtor's   consent, convert
> such a case to a case under chapter 11 or 13 of this title, if it finds
> that the granting of relief would be an abuse of the provisions of
> this chapter. . .

50.    In connection with the forgoing provision, 11 U.S.C. § 707(b) (3) states:

> (3) In considering under paragraph (1) whether the granting of relief would be an
> abuse of the provisions of this chapter in a case which the presumption in
> subparagraph (2) (A) (i) of such paragraph does not arise or is rebutted, the court
> shall consider–
>> (B) the totality of the circumstances...of the debtor's financial situation
>> demonstrates abuse.

51.     Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer

Protection Act of 2005 (BAPCPA"), Section 707(b) expressly stated "there shall be a

presumption in favor of granting the relief requested by the debtor." Significantly, the BAPCPA

eliminated this presumption. *See* In re Doherty, 374 B.R. 288, 290 (Bankr.D.Kan. 2007) and In re

Colgate, 370 B.R. 50 (Bankr. E.D.N.Y. 2007).

52.        In addition, the BAPCPA lowered the standard for dismissal of a chapter 7 case from a required finding of "substantial abuse" in the debtor's filing to a mere finding of "abuse." *See* Id.

53.        The Second Circuit has established a totality of the circumstances test for determining abuse under section 707(b). In re Carlton, 211 B.R. 468 (Bankr. W.D.N.Y 1997) aff'd sub nom. Kornfield v. Schwartz (In re Kornfield), 214 B.R. 705 (W.D.N.Y.), aff'd In re Kornfield, 164 F3d 778) (2d Cir. 1999).   The court set forth various factors that it will consider in an evaluation under section 707(b).   The first factor is whether the debtor has an ability to pay.   This factor includes a determination on whether the budget is excessive.   If, after this analysis, the court determines that the debtor has an ability to pay, it will look to see if there are any circumstances that may militate against the debtor's ability to pay or constitute aggravating factors to show dishonesty or bad faith, or that the debtor is not truly needy.

Specifically, the court will review whether:

(1) the bankruptcy was filed because of sudden illness, calamity, disability, or unemployment;

(2)   whether the debtor has made consumer purchases or cash advances far in excess of an ability to repay;

(3) whether the petition was filed in good faith;

(4) whether the debtor exhibited good faith and candor in filing his schedules and other documents;

(5) whether the debtor has engaged in "eve of bankruptcy purchases";

(6) whether the debtor was forced into chapter 7 by unforeseen or catastrophic events;

(7) whether the debtor's disposable income permits the liquidation of his consumer debts with relative ease;

(8) whether the debtor enjoys a stable source of future income;

(9) whether the debtor is eligible for adjustment of his debts through chapter 13 of the Bankruptcy Code;

(10) whether there are state remedies with the potential to ease the debtor's financial predicament;

(11) whether there is relief obtainable through private negotiation, and to what degree;

(12) whether the debtor's expenses can be reduced significantly without depriving him of adequate food, clothing, shelter, and other necessities;

(13) whether the debtor has significant retirement funds, which could be voluntarily devoted in whole or in part to the payment of creditors;

(14) whether the debtor is eligible for relief under chapter 11 of the Bankruptcy Code; and

(15) whether there is no choice available to the debtor for working out his financial problems other than chapter 7, and whether the debtor has explored or attempted other alternatives.

In re Carlton, 211 B.R. 468 (Bankr. W.D. N.Y.), aff'd sub nom. Kornfeld v. Schwartz ( In re Kornfeld) 214 B.R. 705 (W.D.N.Y), aff'd In re Kornfeld, (2d Cir. 1999).

### §707(b) and the Kornfield Factors Applied

54.        In this case, the first part of §707(b) is met. The Debtor is an individual, her obligations are substantially consumer debts and none of the debts were incurred for a business purpose. The Debtor's Schedule "F" list credit card and retail department store accounts with aggregate debt of $45,000. Substantially, all of these were incurred for personal, family or household purposes. See Voluntary Petition, and Schedules A, D, and F.

**The Debtor's Ability to Repay**

55.        The Debtor has a present ability to repay a significant portion of her debt. The Debtor's claimed average net monthly household income on Schedule I was $7,186.52 and expenses of $7,172.52 on Schedule J. Three facts are significant relating to Schedules I and J, the calculation of gross income and disposable income.

56.        First, the amount of the Debtor's claimed monthly payroll tax deductions appear to be greater than is required to meet her actual tax expenses by approximately $750

57.        Second, the Debtor claims a monthly expense of $468.48 regarding the Ford Edge lease is illusory because it will have expired prior to the hearing on this application and will no longer be an expense of the Debtor's.

58.        Third, the inclusion of Mr. Montalto's credit card payments as expense is inappropriate because the Debtor and her husband have acted as an economic unit and his credit cards have been used predominantly for household purposes.

59.        Based upon the Debtor's household's gross monthly income of approximately $11,700, net income of $7,932 and a reasonable monthly expense budget aggregating $6,400, it is difficult to understand how the Debtor would not have net monthly disposable income exceeding the $14 claimed on Schedule J.

**Other Factors Under The Totality of Circumstances Test**

60.        In addition to the ability to pay, other factors are present that warrant dismissal:

•          The Debtor is eligible for relief under chapters 11 and 13 of the
           Bankruptcy Code;

•          The Debtor's household income in 2014 is projected to exceed $145,000,
           which is more than in 2011, 2012 and 2013.

- The Debtor received significant annual tax refunds due to the over withholding from salaries;

- The Debtor's expenses listed on Schedule J and the deductions on the MTC are either overstated, unnecessary or inappropriate.

## **CONCLUSION**

61.     The U.S. Trustee submits that the facts heretofore mentioned support a dismissal of this case under (1) § 707(b) (2) as being a presumed abuse case, (2) §707(b) (3) (A) as being filed in bad faith and (3) §707(b) (3) (B) because the totality of the circumstances demonstrates that granting this Debtor a chapter 7 discharge would constitute an abuse of the bankruptcy system.

**WHEREFORE,** in consideration of the foregoing, the United States Trustee respectfully requests that the court dismiss this case under 11 U.S.C. § 707(b) and for such other and further relief as is just and proper.

Dated: Central Islip, New York
       May 22, 2014

                                       WILLIAM K. HARRINGTON
                                       UNITED STATES TRUSTEE FOR REGION 2

                                       By: *s/ Alfred M. Dimino*_____
                                            Alfred M. Dimino
                                            Trial Attorney
                                             Office of the United States Trustee
                                            Long Island Federal Courthouse
                                            560 Federal Plaza
                                            Central Islip, New York 11722
                                            (631) 715-7800