UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:

LAURIE R. MONTALTO                                    Case No. 8-14-71323-reg
a/k/a LAURIE BONNICI,                                 Chapter 7

                                    Debtor.
------------------------------------------------------------------x

**MEMORANDUM DECISION**
**(Re: UST's Motion to Dismiss)**

Before the Court is a motion by the Office of the United States Trustee (the "UST")

seeking to dismiss the Debtor's chapter 7 petition pursuant to 11 U.S.C. §§ 707(b)(1), (2) and (3)

("Motion to Dismiss").  The UST contends that a "presumption of abuse" arises in this case

pursuant to § 707(b)(2) because the Debtor utilized improper marital adjustments and other

expense deductions in her Means Test calculation.  Alternatively, the UST argues that the

Debtor's bad faith and the totality of the circumstances of the Debtor's financial condition

warrant a finding of abuse pursuant to § 707(b)(3).  The Debtor maintains that the marital

adjustments and other expense deductions taken on the Means Test are accurate, appropriate, and

substantiated and thus no presumption of abuse, bad faith or actual abuse arises under § 707(b).

An important issue presented in this case – the "marital adjustment" – arises when a

married debtor files bankruptcy without his or her spouse.  Under §§ 707(b)(2)(A) and 101(10A),

the income of a non-filing spouse which is regularly contributed to household expenses of the

debtor or the debtor's dependents must be included in a debtor's disposable income analysis.[1]

Thus, a non-filing spouse's income may only be excluded from a debtor's disposable income

---

[1] A debtor does *not* need to include their non-filing spouse's income on the Means Test if the debtor declares under penalty of perjury that they are legally separated from their spouse or they are living apart.  No such declaration was made in this case.

analysis to the extent that the income is used to pay *non-household* expenses, i.e., expenses that are purely personal to the non-debtor spouse. This is the so-called "marital adjustment" or "marital deduction." In this case, the Debtor's non-filing spouse's income ($119,000) far exceeds the Debtor's ($21,000). The exclusion of a significant portion of the Debtor's spouse's income from the monthly disposable income analysis – here, $1,088.62 per month – through the marital adjustment, while attributing all household expenses to the Debtor, results in negative disposable income under the §707(b)(2)(A) Means Test despite significant combined household income.

Among the myriad of issues presented by the marital adjustment is the burden of proof. That is, does the statute mandate that all of a non-filing spouse's income is presumed to be dedicated to household expenses except for specific expenditures that can be proven by the debtor to be strictly personal to the non-filing spouse; or is the proper interpretation of the statute that the only non-debtor spouse's income included in the Means Test income calculation is that which can be shown *by the movant,* i.e., the UST, to be for household expenses, and all other income of the non-filing spouse should qualify for the marital adjustment. These are two very different interpretations of the statute placing the burdens on opposing sides of the issue.

The Court finds that, except in the situation where spouses maintain separate households, all of a non-filing spouse's income is presumed to be dedicated to household expenses, and it is ultimately the debtor's burden to prove which expenses are purely personal to the non-filing spouse. While it is easy to start and end with the proposition that the burden of proof on a motion to dismiss is on the movant, the facts necessary to prove whether certain expenses are household or non-household are almost entirely within the control of the debtor and the non-filing spouse, and they are rarely susceptible to being determined using a bright line test. The

Court finds that it is the UST's burden to present a prima facie case that a debtor is not including all of a non-filing spouse's income that is paid on a regular basis for household expenses such that a presumption of abuse would arise. The burden then shifts to the debtor to produce evidence to prove that the marital adjustments were for non-household expenses.

The Court is fully cognizant of the evidentiary burden this may place on debtors in the event of having to defend a § 707(b) motion to dismiss, and recognizes that such a rule may bar certain debtors from obtaining bankruptcy relief. However, the Court is also mindful that many of the statutory changes made by Congress through BAPCPA were intended to urge debtors into repayment plans and away from no-asset liquidations where the mathematical formula created by BAPCPA shows an ability to repay – real or fictional. To the extent debtors might argue that it is inequitable to exclude from the disposable income analysis a non-filing spouse's very real obligation to repay debt, the Court believes that these "household expenses" are in fact expenses of the debtor which should be captured elsewhere on the Means Test thus reducing disposable income. Regardless of this Court's beliefs about BAPCA, it must administer the law as written and not as perhaps we wish it were written.

Applying the standard set forth herein, the Court finds that the UST has sustained its burden of presenting a prima facie case that the Debtor's marital adjustments were improper, and the Debtor has failed to prove that those adjustments should be attributable to non-household expenses.

## FACTS

On March 23, 2014, Laurie Montalto (the "Debtor") filed a voluntary chapter 7 petition. The Debtor is married to Brian Montalto ("Brian"); however, Brian did not file bankruptcy.[2] The Montaltos live with their three-year-old daughter.  The Debtor has unsecured non-priority debts of $44,976, consisting solely of consumer credit card debt (Schedule F) which she seeks to discharge in this bankruptcy.

Along with the petition, the Debtor filed a calculation of her income and expenses on the Statement of Current Monthly Income and Means Test Calculation as embodied on Official Form 22A ("Means Test" or "Form 22A").  While Form 22A does not carry the weight of the statute, it was promulgated with an intent to capture the disposable income and "presumption of abuse" analysis set forth in §707(b)(2)(A).[3]  According to Form 22A, Brian's gross monthly income is $9,976.11 and the Debtor's is $1,745.09, resulting in total household income of $11,721.20 ($9.976.11 + $1,745.09).  Annualized, this is $140,654 in gross income which exceeds the state median income of $70,151 for a household of three.

After including all of Brian's income into her Means Test calculation as required by Form 22A, the Debtor claimed a total downward marital adjustment of $1,088.62, thus reducing her household gross income, or current monthly income ("CMI"), to $10,632.58.  Against this CMI as reduced by the marital adjustment, the Debtor applied total expenses of $11,084.70

---

[2] Hereinafter, the Debtor and Brian, collectively, will be referred to as the "Montaltos."

[3] The Debtor has amended Form 22A three times.  The amendments were filed on June 30, 2014, (ECF No. 16), July 1, 2014, (ECF No. 20), and October 14, 2014 (ECF No. 25).  For the purposes of this Decision, the Court will rely on the income and expense deductions listed on the most recent iteration of Form 22A filed on October 14, 2014.

resulting in a *negative* monthly disposable income of $452.12. Included among these expenses

are $816 per month for childcare, $100 per month for telecommunications expenses other than

basic home and cell phone services, and $117.44 per month for repayment of the Debtor's 401(k)

loan. The UST takes exception to the marital adjustment as well as these specified expenses.[4]

## PROCEDURAL HISTORY

On May 22, 2014, the UST filed its Motion to Dismiss challenging certain of the "marital

adjustments" taken by the Debtor, as well as other specified expenses which were

unsubstantiated. On June 30, 2014, the Debtor filed opposition, and an evidentiary hearing was

held October 16, 2014. Neither party offered direct testimony nor were the Montaltos present in

the courtroom. The UST's Exhibits A through L were admitted into evidence without objection.

Both parties filed post-hearing memoranda in support of their respective positions on November

14, 2014 at which time this matter was taken under submission.

## DISCUSSION

The UST challenges the Debtor's marital adjustments and a number of other expense

deductions. The UST objects to: (1) the marital adjustments of $1,088.62 on Line 17; (2) the

"Other Necessary Expenses: childcare" deduction of $816 on Line 30; (3) the "Other Necessary

Expenses: telecommunication services" deduction of $100 on Line 32; and (4) the $117.44

monthly 401(k) loan repayment of the Debtor on Line 42 ("Future payments on secured

claims"). Based on the UST's proposed adjustments to these deductions, the Debtor's CMI for §

---

[4] The Debtor also took deductions (both marital adjustments and expense deductions) for certain motor vehicles to which the UST originally objected. However, the motor vehicle expense deductions will not be discussed in this Decision. The UST's post-trial brief concedes that the Debtor is permitted to take a $448.96 marital adjustment on Line 17 for Brian's Jeep, a $259.09 marital adjustment on Line 17 for Brian's Honda Accord, and a $493.58 expense deduction on Line 23 for the Debtor's Ford Edge. The Debtor's post-trial brief at page 3 asks for essentially that same treatment, but for $23.42. Thus no controversy exists as to the motor vehicle expense deductions, and the Court will allow the motor vehicle deductions as proposed in the UST's post-trial brief.

707(b) purposes would be $11,013.15, and total allowed expense deductions under § 707(b)(2), $10,350.26.  The UST contends that the presumption of abuse arises because the Debtor's monthly disposable income under the UST's proposed Means Test re-calculation is $662.89. [5]

## A.   Governing Law and Burden of Proof

Section 707(b)(1) provides that on a motion by the United States trustee a court may dismiss the case of an individual chapter 7 debtor whose debts are primarily consumer debts if it finds that the granting of bankruptcy relief would be an abuse of chapter 7.  There are two methodologies to determine whether a debtor's chapter 7 case is an abuse under § 707(b): (1) a presumption of abuse based on the Means Test/§ 707(b)(2)(A) calculations; or (2) a finding by a court that the debtor's bankruptcy filing was made in bad faith, or that the totality of circumstances of the debtor's financial situation demonstrates abuse, pursuant to § 707(b)(3).

The Means Test calculation is based on the debtor's "current monthly income" and expenses on the date the petition is filed.  *In re Zak*, 361 B.R. 481, 485 (Bankr. N.D. Ohio 2007); *In re Nockerts*, 357 B.R. 497, 500–01 (Bankr. E.D. Wis. 2006).  As defined in § 101(10A)(B), "current monthly income" includes a non-filing spouse's income to the extent that he or she contributes to the household expenses.  11 U.S.C. § 101(10A)(B) ("current monthly income" includes any amount paid by an entity other than the debtor…on a regular basis for the household expenses of the debtor and the debtor's dependents…"); *see Stapleton v. Baldino (In re Baldino)*, 369 B.R. 858, 860 (Bankr. M.D. Pa. 2007).  Form 22A requires a non-filing spouse to report *all* of their income and then a debtor is permitted to deduct the part of the non-filing

---

[5] The UST's post-hearing brief included a proposed re-calculated Form 22A. (UST's Post-Hearing Memorandum, Ex. A.)  However, the UST's proposed recalculation allows the Debtor to take a deduction of $816 for childcare expenses.  This inclusion is inconsistent with the UST's position in the post-hearing brief that the childcare allowance should be disallowed.  The Court will leave it to the parties to work out this inconsistency when the Means Test is recalculated consistent with this Decision.

spouse's income that is not regularly used to pay household expenses of the debtor or the

debtor's dependents.  The result should be that only the non-filing spouse's income that is

contributed on a regular basis for household expenses is included in the debtor's "current

monthly income" consistent with § 101(10A)(B).

The presumption of abuse arises if a debtor's "current monthly income," reduced by the

allowed expenses under §§ 707(b)(2)(A)(ii), (iii) and (iv), over sixty months, is greater than the

lesser of:  (i) 25% of the debtor's nonpriority unsecured claims *or* $7,475 whichever is greater,

*or* (ii) $12,475.  11 U.S.C. § 707(b)(2)(A)(i).  Subsection (ii)(I) allows a debtor to deduct

expenses specified under the National[6] and Local[7] Standards, and the debtor's actual expenses

for the categories specified as "Other Necessary Expenses" by the IRS for the area in which the

debtor resides.[8]  Additionally, subsections (ii)(I) through (V) provide that a debtor may take

added deductions for certain expenses.[9]  The expenses that are not fixed by the Code or by the

---

[6] The National Standards provide allowances for food, clothing, housing supplies, personal care, and miscellaneous expenses.

[7] The Local Standard provide for allowances for housing and utilities (such as mortgage or rent, property taxes, interest, insurance, maintenance, repairs, gas, electric, water, heating oil, garbage collection, residential telephone service, cell phone service, cable television, and internet service), and transportation expenses.

[8] The following are the enumerated categories that qualify as "Other Necessary Expenses": accounting and legal fees, charitable contributions, child care, court-ordered payments, dependent care, education, involuntary deductions, life insurance, secured or legally perfected debts, unsecured debts, taxes, optional telephones and telephone services, student loans, internet provider/e-mail, and repayment of loans made for payment of federal taxes. *See* Internal Revenue Manual 5.15.1.10, http://www.irs.gov/irm/part5/irm_05-015-001.html#d0e1735.

[9] Section 707(b)(2)(A)(ii)(I) allows the following additional deductions: (1) health insurance, disability insurance and health savings account expenses for the debtor, debtor's spouse or dependents; (2) expenses necessary to maintain the safety of the debtor and her family from family violence; and (3) additional amounts for food and clothing up to an additional 5% of the National Standard allowance. Section 707(b)(2)(A)(ii)(II) permits a debtor to deduct expenses for the care and support of elderly, chronically ill, or disabled household or family members who cannot support themselves.  Section 707(b)(2)(A)(ii)(III) allows deduction of educational expenses of minor children up to $1,775 per year per child and § 707(b)(2)(A)(ii)(IV) allows deduction of additional home energy costs.  The Code specifically requires documentation of the expenses claimed for child education expense in subsection (IV) and of

IRS standards must be reasonable and necessary.[10]  Subsection (iii) allows deductions for payment of certain secured debts and subsection (iv) permits a debtor to deduct payments for certain priority claims such as child support or alimony.

The general rule is that the UST bears burden of proof in demonstrating that there is a presumption of abuse under § 707(b)(2).  *In re Witek*, 383 B.R. 323, 326 (Bankr. N.D. Ohio 2007) (citing *In re Wright*, 364 B.R. 640, 643 (Bankr. N.D. Ohio 2007)).  Specifically with respect to the marital adjustments, the UST must initially demonstrate "how much, if any, of a non-filing spouse's income should be imputed to a debtor when making the disposable income calculation." *In re Roll*, 400 B.R. 674, 677 (W.D. Wisc. 2008) (citing *In re Hall*, No. 06–71296, 2007 WL 445517, at *3 (Bankr .C.D. Ill. Feb. 12, 2007)).  However, the debtor cannot "arbitrarily pick a number out of the air for a marital adjustment…without providing sufficient documentation, when it is requested by the objecting party, to show that the claimed amounts are properly deducted."  *In re Dugan*, No. 07–40899, 2008 WL 3558217, at *5-6 (Bankr. D. Kan. Aug. 12, 2008) (finding that "proof can take the form of receipts, documents, testimony or some other form of credible, admissible evidence."); *see also In re Kulakowski*, 10–07286, 2011 WL 3878386, at *5-6 (Bankr. M.D. Fla. 2011) ("[T]he Debtor may not merely think up a theory for a marital adjustment, but must connect the adjustment to specific deductions and expenses.  Not only must the debtor itemize, the burden is on the debtor to substantiate.").

Similarly, when the UST questions, as unreasonable or unnecessary, an "actual" expense deduction taken by a debtor on Part V of the Means Test, the Court finds it is incumbent upon

---

additional housing and utilities expenses claimed under subsection (V), and proof that such expenses are "reasonable and necessary." These expenses, like the expenses in the "Other Necessary Expenses" categories, are not capped or a set standard amount, but are the actual expenses of the debtor.

[10] Eugene R. Wedoff, *Judicial Discretion to Find Abuse Under § 707(b)(3)*, 71 Missouri L. Rev. 1035, 1048 (2006).

the Debtor to come forward with some proof of the expense (or an explanation why proof is

unavailable) and an explanation of why that expense is reasonable and necessary for the debtor

or the debtor's dependents.  Because the Bankruptcy Code does not specifically require

documentation for *actual* expenses taken under the "Other Necessary Expense" categories,[11]

several courts have discussed who has the burden of producing evidence if the validity of such

expenses are challenged.  Courts addressing the issue have held that the debtor bears the burden

of producing evidence of the expenses and demonstrating that the expense is actual, reasonable,

and necessary.  *In re Meade*, 420 B.R. 291, 303 (Bankr. W.D. Va. 2009); *In re Scurlock*, 385

B.R. 814, 816-17 (Bankr. M.D.N.C. 2008) (citing *In re Plumb*, 373 B.R. 429, 440 (Bankr.

W.D.N.C. 2007)).  The *Meade* court's reasoning for requiring the debtor to establish the validity

of actual expenses is sound:

> (i) these categories comprise information more readily available to the debtor than to any
> other party in interest and deal with fact intensive issues which are unique to the debtor,
> and (ii) such expenses are in the debtor's interest to make as large as possible in order to
> avoid a presumption of abuse arising. In short, these expenses are very much like the
> "special circumstances" which a debtor must prove by a preponderance of the evidence to
> rebut a presumption of abuse which has arisen and therefore might reasonably be said to
> partake more of the nature of affirmative defenses to a motion to dismiss rather than
> elements of the presumption itself. Furthermore, to impose the burden of proof upon the
> party moving for dismissal to establish, for example, that claimed additional
> telecommunications services in Line 32 are not "necessary for [the debtor's] health and

---

[11] The Bankruptcy Code expressly requires a debtor to provide documentation of actual Means Test expenses only in limited circumstances.  The first is for expenses a debtor seeks to deduct under § 707(b)(2)(A)(ii)(IV) related to expenses for a dependent child to attend elementary or secondary school. The second is for expenses under § 707(b)(2)(A)(ii)(V) (housing and utilities allowance in excess of allowed IRS Local Standards).  Finally, when the presumption of abuse arises, the debtor has the burden of producing evidence of "special circumstances" to rebut the presumption of abuse.  11 U.S.C. § 707(b)(2)(B).  Specifically, the Code requires the debtor to "itemize each additional expense or adjustment of income and to provide (I) documentation for such expense or adjustment to income; and (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable."  11 U.S.C. § 707(b)(2)(B)(ii).  A debtor is allowed to take the applicable expenses in the IRS' National and Local Standards, reasonable and necessary deductions in the IRS' "Other Necessary Expenses" categories, and certain additional deductions without providing documentation of the expense.

welfare or that of [his/her] dependents" would require such party to try and prove a negative. It makes more sense to require the debtor to prove both that such additional claimed expenses are actually being incurred and that they are reasonably "necessary" for the health and welfare of the household rather than obliging the United States Trustee to try and prove the opposite.

The Court agrees that putting the burden of proof solely on the moving party, here the UST, would be akin to requiring the moving party to prove a negative.  Rather than requiring the UST to prove, for example, that the Debtor in this case *does not* spend $816 per month for a childcare expense, it make entirely more sense that, once questioned, the Debtor be required to prove that expense with documentary evidence.  The Debtor is the party with access to proof on the point, and should be required to substantiate actual expenses.  If the Debtor is able to substantiate expenses that are called into question, then the burden shifts back to and rests with the UST to prove that the bankruptcy filing was abusive.

Thus, there is a shifting burden of proof beginning with the UST's burden to present a prima facie case that a debtor is not including all income of the non-filing spouse that is expended regularly to household expenses, or that the debtor's actual expense deduction is unreasonable, unnecessary and undocumented.  The burden then shifts to the debtor to itemize and substantiate the marital adjustments and expense deductions and prove that she has properly calculated disposable income under § 707(b)(2).  Satisfying this burden in many cases can be very challenging for the average debtor.  However, it is a burden that must be met.

The Court will address each of the disputed marital adjustments and expense deductions separately to determine whether they should be allowed under § 707(b)(2)(A).

**B.  Marital Adjustment Deductions**

On Line 17 of Form 22A, the Debtor applied a total marital adjustment of $1,088.62 to calculate her CMI thereby removing $1,088.62 of Brian's income from the Debtor's disposable income resulting in negative monthly disposable income.  The marital adjustments disputed by the UST include Brian's monthly "business expenses" of $447, Brian's monthly credit card expense of $539, and Brian's monthly 401(k) loan repayment of $102.62.

The parties do not dispute that these expenses are paid on a regular basis.  Thus, the inquiry before the Court is whether the Debtor's claimed marital adjustments are for "household expenses of the debtor and the debtor's dependents."  The Bankruptcy Code does not define "household expenses" and the "determination of the amount paid by a non-filing spouse on a regular basis for household expenses of the debtor or the debtor's dependents is necessarily fact specific and subject to interpretation."  *In re Travis*, 353 B.R. 520, 526 (Bankr. E.D. Mich. 2006); *In re Persaud*, 486 B.R. 25 (Bankr. E.D.N.Y. 2013).

The Court now turns to whether the parties have satisfied their respective burdens of showing whether each marital adjustment claimed by the Debtor reflects household expenses or Brian's personal expenses.

### 1. Non-Debtor Spouse's "Business Expenses"

The UST objects to the marital adjustment for Brian's "business expenses" in the amount of $447 per month.  The Debtor arrived at this figure based on the Montalto's 2013 tax return, on which they claimed unreimbursed business expenses for Brian in the amount of $5,369 ($5,369 ÷ 12 = $447).  According to 2013 tax return, the claimed business expenses break down as follows: $2,534 for "vehicle expense" (depreciation); $665 for parking fees, tolls and transportation; and $2,170 for other business expenses.  Attached to her post-hearing memorandum, the Debtor provided the Court with Brian's credit card statements that she asserts reflect Brian's business

expenses and credit card bills.  (*See* Debtor's Post-Hearing Memorandum, ECF No. 27, Ex. B.)

The UST contends that neither the 2013 tax return nor the credit card statements show that these

expenses were business expenses.  (UST's Post-Hearing Memorandum, ECF No. 29.)

The Court finds that the Debtor has provided no evidence to support the 2013 business

expense deductions, and thus no evidence to prove the $447 marital adjustment for business

expenses other than the 2013 tax return claiming the expense.  The Debtor would place the

burden on the UST to disprove the expense: the Debtor argues that the UST "has provided no

evidence that the Business Expenses are household expenses."  However, the UST has shown

that the credit card charges that purportedly support the Debtor's claimed "business expenses"

include charges for what appear to be household expenses, including charges at gas stations,

restaurants, super markets, pharmacies, Babies R Us and Target, for example.  The Court will

presume that these are household expenses unless the Debtor proves otherwise.  The Debtor's

reliance on her 2013 joint tax return which shows unreimbursed business expenses is also

unsupported.  Tax returns showing unreimbursed business expenses do not, without more, satisfy

the Debtor's burden in this case.

Accordingly, the Court disallows the business expense marital adjustment due to the

Debtor's failure to substantiate Brian's alleged "business expenses" in the amount of $447 per

month.

### 2.  *Brian's Credit Card Expenses*

The UST objects to the marital adjustment for Brian's credit card payments of $539 per

month.  They argue that Brian's credit card statements "clearly show that the charges therein

were utilized primarily for joint household expenses (heating oil, clothing, food, medical co-

pays, recreation for their children, replacement of fencing, gasoline, and dry-cleaning as

examples)." (UST's Post-Hearing Brief, ECF No. 29.)  The UST contends that the marital adjustment should be disallowed because the Debtor failed to "identify and quantify the items and amounts her non-filing spouse claims as personal" and, failing that, repayment of those charges should be considered a "household expense."  (*Id.*)  The Debtor concedes that the credit cards were used in part to cover household expenses, but argues that they were also used for expenses purely personal to Brian.  As with Brian's "business expense" deduction, the Debtor would put the onus on the UST to prove that the credit card purchases were for household expenses.

The Debtor, having acknowledged that Brian's credit cards were used for both household and non-household expenses, has the burden of distinguishing which charges should be deemed personal to the non-filing spouse and deductible as a marital adjustment.  The Debtor, not the UST, is in a position to discern which charges were personal and which were household.  Although conceivably, there are some charges that might present themselves as either household or non-household, for a majority of the charges on Brian's credit card it is impossible to discern.  The Debtor has not offered any evidence to show which expenses were personal to Brian.  Absent such evidence the Court will presume that all of the charges were for household expenses.

The Court is cognizant of the fact that Brian's credit card debt will not be discharged in this bankruptcy, that Brian is legally obligated to repay the credit card balances, and it is a seemingly inequitable result not to allow the Debtor to reduce household disposable income by an expense that is actually being paid by the non-filing spouse.  Nonetheless, the statute must be applied as written, not as we would like it to be.  The Court will note, however, that to the extent Brian's credit cards were used to fund *household expenses*, those expenses can and should also

be considered the "debtor's expenses" under the provisions of § 707(b)(2)(A)(ii)(I) and can and should be captured within Lines 19A through 32 of the Means Test.

Accordingly, the Court disallows Brian's monthly credit card expense marital adjustment of $539 due to the Debtor's failure to prove what percentage of the charges on Brian's credit cards were non-household – i.e., purely personal to Brian.

### 3. *Non-debtor Spouse's 401(k) Loan*

The UST objects to Brian's $102.62 monthly 401(k) loan repayment as a marital adjustment. The UST contends that the loan proceeds were deposited into the Montalto's joint bank account on August 12, 2013 and used for household repairs and other household purposes. Here again, the Debtor would place the burden on the UST to prove that the 401(k) loan proceeds were used for household expenses. (Debtor's Post-Hearing Brief, ECF. No. 27). In addition, the Debtor argues that repayment of the loan from Brian's 401(k) account is personal to Brian and is not a household expense regardless of what the loan proceeds were used for.

There are a couple of reported cases addressing whether a debtor's non-filing spouse's 401(k) loan repayment is deductible as a marital adjustment. *See In re Vollen*, 426 B.R. 359 (Bankr. D. Kan. 2010); *In re Toxvard*, 485 B.R. 423 (Bankr. D. Colo. 2013).[12]  Both cases use different approaches in concluding that the marital adjustment should be allowed. In *Vollen*, the court reasoned that the funds used to repay the 401(k) loan, like the non-debtor's tax withholdings, did not enter into the household income stream and are therefore not regularly devoted to household expenses. *Id.* The court further reasoned that, under Kansas law, absent dissolution of the marriage the retirement account is the sole property of the non-debtor spouse.

---

[12] Admittedly both *Vollen* and *Toxvard* involve chapter 13 debtors. However, the distinction is without a difference on this particular issue.

*Id.*  As such the non-debtor's contribution to, and repayment of a loan from, a 401(k) account are funds that do not enter the household income stream, regardless of what the proceeds of the loan were used for.  *Id.*

In *Toxvard*, the debtor was allowed to deduct the non-debtor spouse's 401(k) loan repayment as a marital adjustment, but for different reasons.  485 B.R. at 439.  In *Toxvard*, the court analyzed whether the loan proceeds were used for household expenses.  In that case, the non-debtor spouse used the proceeds to make home improvements on property he solely owned. *Id.*  The court concluded that given that the proceeds were used towards a home that the debtor did not own, the repayment of the 401(k) loan expenses were not household expenses.  *Id.*

The Court agrees with the approach taken in *Toxvard*.  To be consistent with its ruling with respect to Brian's monthly credit card payments, the Court finds that it is appropriate to the look at what the proceeds of the non-filing spouse's 401(k) loan were used for when determining whether to allow the marital adjustment for the loan repayment.  As with Brian's credit cards, it is Brian's obligation and his alone to repay the 401(k) loan.  But if the 401(k) loan was used to fund household expenses, then the repayment of that loan itself must be considered a household expense.  The Debtor concedes that the 401(k) loan proceeds were deposited into the Montalto's joint checking account and that household expenses were paid from that account.  The Debtor, however, argues that Brian's individual expenses were also paid from that account.  As with Brian's credit card charges which were not clearly household or non-household, the Court finds that it is incumbent upon the Debtor to prove what percentage of the 401(k) loan proceeds were used towards household versus non-household expenses.

Accordingly, the Court disallows Brian's monthly 401(k) loan repayment marital adjustment of $539 due to the Debtor's failure to prove what percentage of the loan proceeds were used for non-household expenses – i.e., expenses purely personal to Brian.

## C. Expense deductions

### 1. *Childcare Expenses*

Line 30 of the Means Test allows a debtor to deduct the "total average monthly amount [the debtor] *actually* expend[s] on childcare." (Emphasis added).  The Debtor has, on different iterations of Form 22A, sought to take different amounts for this deduction:  first, she took $570, then $816, and finally, $705 per month for child care.  The Debtor states that she currently "pays her mother $500/month and the daycare $205/month, for a total of $705/month in childcare expenses for care alone.  The Debtor pays her mother in cash, as is customary with people hiring family members to babysit their children, has not provided evidence of this payment." (Debtor's Post-Hearing Memorandum of Law, ECF No. 27, at 12.)  The UST does not dispute that the Debtor should be entitled to take a childcare expense, but contends that the expense should be denied here because the Debtor has failed to provide documentation to demonstrate the actual expenditure.

The Court finds that, although $705 seems to be a reasonable amount to spend on childcare per month, reasonableness is not the end of the analysis.  The UST, possibly based on the inconsistency in the Debtor's monthly expense deductions for this category, requested documentation to support the expense and none was provided.  Documentation of this expense, in the form of an affidavit from the Debtor's mother and an invoice from the other childcare provider, would seem easy enough to provide and yet the Debtor did not provide any evidence to substantiate the expense, nor did she appear to testify at the evidentiary hearing.

Accordingly, the Court will disallow the Debtor's childcare expense deduction on Line 30 of the Means Test unless and until the proof of the expense is provided to the satisfaction of the UST.

### 2. *Telecommunications Expenses*

Line 32 of the Means Test allows a debtor to take an expense deduction for telecommunication services – other than basic home telephone and cell phone services which are already accounted for on Line 20A – to the extent the additional expense is necessary for the health and welfare of the debtor and the debtor's dependents.[13] *In re Leggett*, No. 10-03383, 2011 WL 802806, at *7-8 (Bankr. E.D.N.C. Mar. 2, 2011); *In re Plumb*, 373 B.R. 429 (Bankr. W.D.N.C. 2007). The Debtor took a standard deduction of $702 per month on Line 20A which included, among other things, basic telephone and cell phone service (for a family of three). She seeks to take an additional $100 on Line 32. The Debtor argues that the additional $100 expense includes: (a) call waiting and internet service for her cell phone so that she can be reachable in case there is a problem with her child while she is at work, and (b) high speed internet service that Brian requires because he sometimes works from home. The UST argues that the Debtor has failed to show that the additional $100 telecommunication expense is actual and necessary for her health and welfare or that of her dependent child.

The Debtor provided evidence of two telecommunications monthly invoices: Optimum (cable, phone and internet, $199.01) and AT&T (cell service, $186.56). The Optimum bill included charges for: television ($110.28); phone ($14.95); and internet ($39.90). (Hr'g Ex. J.9.) Of the $110.28 in television expenses $65.05 is for basic services. The other charges are

---

[13] Line 32 is intended to capture the expense allowance in § 707(b)(2)(A)(ii) for "the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, . . . for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent."

attributed to DVR services for four rooms and sports programming.  Of the $39.90 internet

charges, the Debtor pays $9.95 per month for high-speed internet.  The Montaltos also incurred

charges for On Demand services of $25.75.  (*Id.*)  The AT&T bill shows that the Montaltos have

combined monthly cell phone charges of $186.56 which appears to be for two cell phones (Hr'g

Ex. J.10.)  Based on the invoice it appears that both phones have data plans, one for $45/month

and the other $30/month.

The Court finds that internet service for the Debtor's cell phone is not an unreasonable

expense and, based upon the Debtor's representations, is necessary to her welfare and that of her

dependent child.  As such, she should be permitted to claim an additional telecommunications

expense on Line 32 for the cost of internet service on her cell phone.  It is unclear from the

AT&T invoice whether this amount is $30 or $45 per month as the invoice does not identify

which phone is the Debtor's and which is Brian's.[14]

The Court disallows the additional telecommunications expense to the extent it is for high

speed internet service.  By the Debtor's own account, the high speed internet expense is one that

is necessary for Brian's job.  Brian is not a dependent of the Debtor and therefore this expense

cannot be considered necessary for the health and welfare of the Debtor or her dependent.

The Debtor would argue that it is unreasonable to disallow any part of the $100

additional telecommunications expense given that the Debtor's actual monthly

telecommunications expenses exceed $380 per month, and are not adequately accounted for in

the standard Line 20A allowance for utilities.  However, the Line 32 deduction is clear in that it

is limited to actual expenses "to the extent necessary for your health and welfare and that of your

dependents."

---

[14]  There is no separate line item for "call waiting" and as such the Court cannot distinguish that
expense from the basic cell service.

The Court will allow the additional telecommunications expense only to the extent of $30 or $45, depending on which number represents *the Debtor's* actual expense for cell phone internet service.  The parties are directed to confer and agree on the amount.

### 3.  *Debtor's 401(k) Loan Repayments*

On Line 42 – "[f]uture payments on secured claims" – the Debtor has taken a $117.14 monthly expense deduction for repayment of her 401(k) loan, listing her Charles Schwab 401(k) account as the property securing the debt. (ECF No. 25 at 6.)[15]  The UST argues that repayment of the Debtor's 401(k) loan is an inappropriate expense deduction under Line 42, or any other provision of §707(b)(2)(A).

The majority of bankruptcy courts considering this issue has ruled that a 401(k) loan repayment is not a debt within the meaning of the Bankruptcy Code, and not deductible by a chapter 7 debtor on Line 42.  *See,e.g.*, *In re Egebjerg*, 574 F.3d 1045, 4049 (9th Cir. 2009) (relying on *New York City Employees Retirement System v. Villarie* (*In re Villarie*), 648 F.2d 810 (2d Cir.1981) (finding that an obligation to repay a pension loan does not constitute a "debt" and could not be discharged in a bankruptcy case filed by the participant)); *McVay v. Otero*, 371 B.R. 190, 199-200 (W.D. Tex. 2007); *In re Robrock*, 430 B.R. 197, 209-10 (Bankr. D. Minn. 2010); *In re Hartley*, No. 13-61182, 2014 WL 1329407, at *2 (Bankr. D. Or. Mar. 28, 2014); *In re Robinson*, No. 1202313, 2013 WL 5567265, at *16-17 (Bankr. S.D. Miss. Oct. 9, 2013); *In re Wellington*, No. 11-41711-659, 2012 WL 441260, at * 5 (Bankr. E.D. Mo. Feb. 9, 2012) (recognizing that there may be tax consequences but the 401(k) still is not a "debt").  The Court joins the majority and finds that a 401(k) loan is not a "debt" within the meaning of § 707(b)(2)(A)(iii), and is not deductible under that provision.

---

[15]    Line 42 reflects the secured debt expense deduction allowed under § 707(b)(2)(A)(iii).

Even if the Debtor's 401(k) loan repayment does not constitute a debt under § 707(b)(2)(A)(iii), she asks this Court to allow her to take the expense deduction for the following reasons: a 401(k) loan repayment is a proper expense deduction in chapter 13 cases which should be extended to chapter 7; repayment of a 401(k) loan is mandatory and should be allowed on Line 26 (involuntary deductions for employment) if not on Line 42; a 401(k) is an exempt asset and the Debtor should be permitted to replenish those exempt funds because she used the loan to repay creditors; and the UST should be equitably estopped from taking the position that the 401(k) loan repayment expense should not be allowed, because it has taken a contrary position in the past. The Court will address these arguments in turn.

First, while it is true that a chapter 13 debtor is permitted to deduct from "disposable income" the repayment of a qualified retirement account loan, no such expense deduction is found in § 707(b). *See* 11 U.S.C. § 1322(f) ("A plan may not materially alter the terms of a loan described in section 362(b)(19) [which includes a debtor's 401(k) plan] and any amount required to repay such loan shall not constitute "disposable income" under section 1325."). The Court declines to extend § 1322(f) to chapter 7. Congress did not deem it appropriate to allow this expense deduction in chapter 7, and it would be inappropriate for this Court to write such a deduction into the Code.

Second, the Debtor's argument that the 401(k) loan repayment is mandatory is unsupported. Line 26 allows a debtor to take an expense deduction for involuntary employment deductions, such as retirement contributions, union dues, and uniform costs, but not voluntary 401(k) contributions. While a failure to repay a 401(k) loan may result in negative tax consequences to a debtor, that does not make repayments on the loan "involuntary" sufficient to justify a deduction on Line 26. *See In re Wellington*, 2012 WL 441260, at * 5; *In re Koch*, 408

B.R. 539, 543 (Bankr. S.D. Fla. 2009).  Under the Means Test as implemented by the 2005

Amendments, the Court is bound by the specific formula adopted by § 707(b)(2)(A).  The Debtor

must demonstrate that an expense deduction fits within a particular part of that formula or it

cannot be taken.

Third, applying this same reasoning, the notion that the Debtor may have used the loan

proceeds from an exempt account to repay creditors, is unpersuasive.  *See In re Gonzalez,* 378

B.R. 168 174 (Bankr. N.D. Ohio 2007) ("this fact, alone, will not operate to exclude from the

Debtors' 'disposable income' the monthly repayments being made on the loan.").  The Debtor

cites no authority for the notion that replenishment of an exempt retirement account through

401(k) loan repayments is a permissible expense deduction, and the Court finds no merit in this

argument.

Fourth, on her equitable estoppel argument, the Debtor has provided the Court with no

evidentiary support for her argument that the UST has taken a contrary position on this issue.

Without more, the Court will not consider this allegation.

Finally, although some courts have left open the possibility that a 401(k) loan repayment

may qualify as a "special circumstances" under § 707(b)(2)(A)(iv), the Debtor has not made this

argument.  *See In re Barker*, No. 12-32954, 2013 WL 796171, at *3-4 (Bankr. N.D. Ohio Mar. 1,

2013) (analyzing special circumstances).  Nor does this Court believe the facts of this case would

warrant treating this as a "special circumstance." *See In re DeJoy*, No. 11-10268, 2011 WL

5827319, at *5 (Bankr. N.D.N.Y. Nov. 8, 2011) (use of loan proceeds to repay debt is not a

"special circumstance").

Thus, the Court disallows the Debtor's $117.14 expense deduction for repayment of her 401(k) loan.

**D. Section 707(b)(3), "bad faith" and "totality of the circumstances"**

The UST argues that even if a presumption of abuse does not arise under §707(b)(2)(A), this case should be dismissed under §707(b)(3)(A) (bad faith), or §707(b)(3)(B) (the totality of the circumstances). In sum, the UST argues that this Debtor's household income falls above the median for this area, her expenses are overstated, the UST believes she has an ability to repay her debts and thus the filing of the chapter 7 was an abuse. The UST also argues that the filing of multiple iterations of the Means Test with fluctuating expense deductions evidences bad faith.

The record before the Court does not support a finding of bad faith in this case. Regardless of the outcome of this Decision with respect to specific line item deductions, the Debtor put forth good faith legal arguments in favor of each deduction and the Court cannot find bad faith or that there was an intent to abuse the system. Considering the lack of evidence of bad faith, if the ultimate Means Test calculation determines that there is no presumption of abuse in this case, the Court will not find that abuse under §707(b)(3).

## CONCLUSION

For the reasons stated herein, the Court disallows the following "marital adjustments" taken on Line 17 of Form 22A: (1) non-filing spouse "business expense" of $447, (2) non-filing spouse credit card expense of $539, and (3) non-filing spouse 401(k) loan repayment of $102.62. The Court also disallows the following expense deductions as follows: (a) Line 30 childcare expense of $816 (or $705); (b) the Line 32 telecommunications expense deduction is disallowed except to the extent of the actual amount spent for the Debtor's cell phone data plan ($30 or

$45/month), and (c) Line 42 expense item for repayment of the Debtor's 401(k) loan of $117.44 per month.

It appears to the Court that a presumption of abuse will clearly arise if these expense items are excluded from the Means Test calculation.  However, the Court will leave it to the parties to submit a recalculation of the Means Test consistent with this Decision.  If, upon re-calculation, a presumption of abuse arises, the UST is directed to settle on the Debtor and her counsel a proposed order dismissing this case under §707(b)(1).



**Dated: Central Islip, New York**
**September 17, 2015**

_____
**Robert E. Grossman**
**United States Bankruptcy Judge**